CITY OF CHATTANOOGA, Appellant,

v.

**Janet L. McCOY and Patricia Combs, Appellees.**

Supreme Court of Tennessee, at Knoxville.

Feb. 7, 1983.

Eugene N. Collins, W. Lee Maddux, Chattanooga, for appellant.

Larry G. Roddy, William C. Killian, Chattanooga, for appellees.

OPINION

FONES, Chief Justice.

The issue before this Court is the constitutionality of an ordinance of the City of Chattanooga that prohibits nudity, the performance of a number of sex acts, actual or simulated, and the appearance of a female dressed so as "wholly or substantially" to expose to public view one or both breasts, in a public place.

The ordinance was enforced in the trial court but the Court of Appeals held it to be overbroad and violative of the First and Fourteenth Amendments of the United States Constitution as interpreted by the Supreme Court of the United States.

I.

Defendants were dancers at the Night Haven Lounge in Chattanooga. The undisputed proof was that they performed a dance routine attired in a "g-string" covering their genital areas and "clear pasties," if anything, covering their breasts. After performing the dance each defendant went to a different table and each defendant was observed allowing a male patron to fondle her breasts.

II.

Chattanooga Ordinance Number 7420 reads in pertinent part as follows:

"*Section 25–28.2*

(a) It shall be unlawful for any person to perform in a public place, or for any person who owns or operates premises constituting a public place to knowingly permit or allow to be performed therein, any of the following acts or conduct:

(1) The performance of acts or simulated acts of sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, or any sexual acts which are prohibited by law;

(2) The actual or simulated touching, carressing or fondling on the breasts, buttocks, anus or genitals in public; or

(3) The actual or simulated public displaying of the pubic hair, anus, vulva or genitals.

(b) It shall be unlawful for any female to appear in a public place so costumed or dressed that one or both breasts are wholly or substantially exposed to public view, and it shall be unlawful for an owner or operator of premises constituting a public place to knowingly permit or allow any such person to appear on the premises owned or operated by him. 'Wholly or substantially exposed to public view,' as it pertains to breasts, shall mean the showing of the female breast, in a public place, with less than a fully opaque covering of any portion of the breasts below the top of the nipple.

(c) For the purposes of Section 25–28.2, 'public place' shall include: streets, sidewalks or highways; transportation facilities; schools; places of amusement; parks; playgrounds; restaurants; nightclubs; cocktail lounges; burlesque houses; bars; cabarets; taverns, taprooms; private fraternal, social, golf or country clubs; or any place that allows the consumption of intoxicating beverages on the premises.

(d) Any person violating any of the provisions of this section, upon conviction by the court, may be imprisoned for not more than thirty (30) days, and shall be fined not less than twenty-five dollars ($25.00), nor more than fifty dollars ($50.00), for each violation."

### III.

Perhaps the only statement that can be made with some degree of certainty, considering the state of the law applicable to such ordinances, is that the conduct of which these two defendants were found guilty and convicted may be constitutionally prohibited. The "overbreadth" constitutional problem with this and similar laws is the possibility that the sweep of the prohibitions may bring within their ambit speech, performance, or expression protected by the First Amendment.

The City relies upon *State v. Baysinger*, 397 N.E.2d 580 (Ind.1979), *appeal dismissed* 446 U.S. 931, 100 S.Ct. 2146, 64 L.Ed.2d 783 (1980), where in an analogous situation the Indiana Supreme Court in a three-two decision denied defendants standing to challenge the facial invalidity of an ordinance that defendants insisted was so broad that it would prohibit a wide-range of free expression protected by the First Amendment; that being a First Amendment claim, defendants may raise the rights of others, even though their conduct may constitutionally be prohibited. The State asserted that public nudity was conduct, not speech; that it was not protected by the First Amendment; and that defendants were not entitled to raise the issue of facial invalidity. The Indiana statute declared sexual acts and nudity, in terms similar to the Chattanooga Ordinance, to be "public indecency." The conduct of which defendants in *Baysinger* were charged and convicted was nude dancing and nude appearances in lounges and bars.

In *Baysinger*, after reviewing a number of United States Supreme Court cases,[1] the Court drew these conclusions: (1) that certain public conduct which involves nudity may be regulated on a standard different from that provided for movies or books; (2) that states may prohibit public nudity without requiring proof of obscenity; and (3) that there is no First Amendment right to appear nude in public, only a constitutional requirement "to tolerate or to allow some nudity as a part of some larger form of expression meriting protection, when the communication of ideas is involved." 397 N.E.2d at 587.

---

1. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *reh. denied*, 414 U.S. 881, 94 S.Ct. 26, 38 L.Ed.2d 128 (1973); *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), *reh. denied*, 410 U.S. 948, 93 S.Ct. 1351, 35 L.Ed.2d 615 (1973).

Finally, in rejecting defendants' First Amendment claim and holding the statute constitutional as a valid exercise of the police powers, the Indiana Supreme Court said:

"A critical part of the final issue to be decided relates to whether appearing nude or performing a nude dance as presented in these cases is simply conduct or is expression entitled to First Amendment protection. In the cases before us it is clear the activity involved is appearing nude or dancing in the nude in bars and is conduct. Appellees make no claim that there is any pure speech involved in their appearances. They make no claim that the expression of any ideas is involved or inhibited because of the restriction on nudity in a public place.....
This activity is conduct, not speech, and as such this claim does not rise to the level of a First Amendment claim. The governmental interest in prohibiting conduct that has long been recognized as public indecency is unrelated to the suppression of free speech." *Id.*

In *Gabriele v. Town of Old Orchard Beach,* 420 A.2d 252 (Me.1980), the Maine Supreme Court relied upon *Baysinger* and the significance of the United States Supreme Court's dismissing the appeal, in rejecting a constitutional attack on an ordinance similar to the one under consideration here. We quote the following from that decision:

"The decision of the Indiana Supreme Court thus went even beyond the broad language of *Doran v. Salem Inn, supra,* characterizing *California v. LaRue, supra* as standing for the proposition that

'the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-first Amendment, outweighed any First Amendment interest in nude dancing and that a State could therefore ban such dancing as a part of its liquor license program.' 422 U.S. 922, at 932–33, 95 S.Ct. 2561, at 2568.

In the face of the controversy regarding whether the language in *Doran v. Salem Inn* was an accurate statement of the scope of the actual decisions of the Supreme Court of the United States, the Indiana Supreme Court squarely took the position that it was entirely consistent with the First-Fourteenth Amendments to prohibit the activity of topless dancing by a female, as such and without more, not only in bars or taverns pursuant to powers conferred by the Twenty-first Amendment but also in any public place pursuant to the traditional power of a State to protect against public 'indecency.'

The question of the correctness of this decision, relative to First-Fourteenth Amendment constitutional protections, was raised before the Supreme Court of the United States in an appeal to that Court from the judgment of the Indiana Supreme Court. On May 12, 1980 the Supreme Court of the United States dismissed the appeal for want of a substantial federal question. *State v. Baysinger, et al, sub nom. Clark v. Indiana,* 446 U.S. 931, 100 S.Ct. 2146, 64 L.Ed.2d 783 (1980).

Pursuant to *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), *see also Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), this disposition signifies that the Supreme Court of the United States sustained *on the merits,* with precedential force as to all courts except the Supreme Court of the United States itself, the Indiana Court's decision that a statute which is facially so broad that it prohibits topless dancing by a female occurring in *any* public place—provided that the dancing does not occur as a part of written material, or of a motion picture or other pictorial representation, or of a live musical or theatrical performance or production— does not embody an unconstitutional encroachment on speech or expression." *Id.* at 256–57.

In *People v. Garrison,* 82 Ill.2d 444, 45 Ill.Dec. 132, 412 N.E.2d 483 (1980), *appeal dismissed* 450 U.S. 961, 101 S.Ct. 1475, 67 L.Ed.2d 610 (1981), a "public indecency" statute with a "public place" definition more expansive than the Chattanooga ordinance was upheld in the face of an over-

breadth attack. The Illinois court reasoned, in part, as follows:

"The statute itself does not disclaim application to operas, ballets, plays or other performances within the protection of the First Amendment.... We find, however, that activities which are primarily expressive are not within the scope of the statute." 45 Ill.Dec. at 136, 412 N.E.2d at 487.

*Grand Faloon Tavern, Inc. v. Wicker,* 670 F.2d 943 (11th Cir.1982), and *Kew v. Senter,* 416 F.Supp. 1101 (N.D.Tex.1976), reach the same result for reasons similar to those expressed in *Baysinger, Gabriele* and *Garrison.*

We recognize that there are cases holding similar statutes to be overbroad, perhaps greater in number than those following the *Baysinger* approach. We agree with the comment of the Indiana Supreme Court that this area of the law "is confused by the consideration of overlapping concepts of nudity, public indecency, and obscenity in differing contexts." 397 N.E.2d at 585.

In the instant case, defendants assert no claim that their conduct involved any speech or expression of ideas entitled to First Amendment protection. Their challenge is based upon an alleged facial invalidity, that in substance says, some other person or persons may be prohibited from presenting in a public place an artistic, socially redeeming expression of ideas that involves some nudity. The obvious thrust of the Chattanooga ordinance is to outlaw nudity and indecent sexual conduct in public without any express or implied intent to suppress or prohibit any legitimate speech or expression entitled to First Amendment protection. It is a travesty to allow nude and crude public exhibitors of the human body, the privilege of asserting the rights of persons who contribute to society's permanent values and are entitled to First Amendment protection, and to read into a public indecency statute an intent to suppress free speech and expression. This Court is not willing to follow those cases that would recognize defendants' First Amendment claim of overbreadth as valid.

Any overbreadth in this ordinance is, in our opinion, minimal and insignificant. We understand *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) to hold that where, as here, conduct, not speech, is sought to be regulated, the overbreadth must not only be real, but substantial as well, to violate the Federal Constitution. We hold the Chattanooga ordinance to be a valid exercise of the police powers of the State.

The judgment of the Court of Appeals is reversed and that of the trial court affirmed. Remanded for entry of appropriate orders and enforcement of convictions. Costs are assessed against defendants.

COOPER, BROCK, HARBISON and DROWOTA, JJ., concur.